Good morning, Your Honors. Daniel Mulligan for Mr. Pacheco. This is, as the Court is well aware, a basic claim under the Truth in Lending Act, but we're really here for two reasons, in my mind. First, of course, Mr. Pacheco, if this ruling stands, will lose his home. He's been living in for quite some time. And equally important from the public point of view, I think, if this decision, if this ruling stands, it will, as a practical matter, eviscerate the major remedy provided under the Truth in Lending Act. And let me explain why. Well, before you do that, why don't you tell us why Yamamoto is not controlling? Yamamoto, Your Honor, which this Court, of course, decided, is not controlling for two reasons. First, it's factually distinct. In Yamamoto, the plaintiff, in that matter, conceded that they could not and would not ever tender. Despite that concession at summary judgment, the Court, nonetheless, said, I will give you another 60 days to take another look at it. Can you tender, perchance? Again, they said no. At that point, and only at that point, did the Court take the step of saying, no, I'm going to grant summary judgment. This becomes a moot question. That is not what occurred here. The second reason Yamamoto, Your Honor, is not controlling is after that decision, the Federal Reserve, in response, as far as we can tell to Yamamoto, actually changed the interpretation of the statute in the staff commentary. Did they refer to Yamamoto? I'm sorry, Your Honor? Did they refer to Yamamoto? They referred to the process of equitably changing the- Did they refer to Yamamoto? The staff commentary, Your Honor, did not expressly refer to that case. So it's your idea that they referred, but it's not in there what they said. Whether they were actually trying to manipulate or, in some strange way, reverse Yamamoto, I'm not going to say that. It's not in there. But what it did- Do you think they can reverse Yamamoto as far as we are concerned? No, Your Honor. Okay. Not suggesting that. What I'm saying, though, is the staff commentary was, for whatever reason, changed after Yamamoto, and it goes on to say that the substantive right is not controlled by the court's ability, which is acknowledged in the statute in the commentary itself, to change the sequence of events under rescission. You know what may pose a problem? You can prove it. A person can prove his ability to tender. And don't- am I wrong on that? I have to say, Your Honor, I think in most instances, and why I'm concerned about this decision and why I say it will eviscerate the remedy, is in most cases, no. And the reason is time. When do you have to establish that you can tender? The actual tender only comes at the end of the process. That you can, that you're capable of tendering. I think that's what we have to look at on this record, don't we? It is, I agree, it is more than saying I'm willing to do it. There has to be some evidence of ability. And I'll get to our factual record. I think that was here in the exclusion of that. But to follow up on the timing sequence, normally that tender amount is only at the end of the day when the actual amount required to tender is established. The fact of liability has already been established. And this case is a good example. The original rescission demand was made in April of 2007. The summary judgment motion was decided in 2010, over two years later. And here we are, of course, in 2011. During that period of time, the market has changed somewhat. In April of 2007, in fact, anyone could have gotten a loan. By the end of that year, no one could get a loan. I don't want us to issue a ruling. I don't think that we'll take into consideration the things you're arguing right now, do you? No. My point that I'm getting to, however, is the timing possibility and when you have to provide some evidence of your ability to tender. I would argue that at the point of summary judgment, some evidence would be required. But what you cannot do as a practical matter, unless you have cash in hand, is come in and say, I have this loan in hand. Because it's simply not possible, practically. I have been doing rescission cases. Is there any evidence sufficient to defeat summary judgment on the issue of tender that Mr. Pacheco was in a position to tender as of April 2007? No, that was not requested. So I think you're arguing for a rule that we take a different date, a different timing for the issue of tender. And so I want to find out whether we should even consider that. And there's no evidence that tender could have been made in 2007. I think there was no evidence on this record, Your Honor. I think it is a matter that could be considered by the district court because Yamamoto tells the court to consider the equities. And maybe one of the equities is, if it had been established, which it was not in this case, one of the equities to be considered was, or could be, was the borrower able to tender at the time they made the demand. That could certainly be a consideration under Yamamoto. Here, it doesn't apply. We did not establish that on the record. I agree. What we did present was evidence. So you want an opportunity to go back to the district court and present evidence that Pacheco could have tendered in April 2007? No, Your Honor. What I want is to be able to go back and allow the process to go through so a liability is established and Mr. Pacheco can then go get the loan that the record reflects he could have obtained. The rescission process could be completed. You stress, though, when you say the record shows, there is an affidavit of someone who may or may not know what he's talking about, but let's assume he does and is an expert, as he said he was. Is that enough? I would argue that it is enough under these circumstances. What he said, understand? Yes, Your Honor. What did he say in your view? He said in his affidavit that he's a broker. He's been doing loans in that area for many years. And what he could have done, didn't he speculate on what he could have done at that time? No, he did not speculate, Your Honor. He said, I don't believe he did, he said, I've been doing this many years in this area. I'm familiar with the housing market in this area. I'm familiar with the appraisal on the house. I'm familiar with the products, the loan products available in the marketplace, and it's my belief, my opinion, that this person can obtain a loan sufficient to pay back all that will be required on the tender. That's what he said. But the question is not whether he can today, but whether he could have in 1907, as Judge Fiala points out. Is that what we have to look at? No. The question presented is, could he do it at the time of summary judgment? Because that was when the issue was raised in 2010. Now, he could have done it. Let's suppose your broker knows everything about procuring a loan, right? What was the evidence that the appraisal was accurate? There was no appraisal review.  There was no appraisal. I'm sorry? Was there an appraisal? Yes. Did the man testify? Was there an affidavit from an appraiser saying, I have an appraisal house at $609,000? No, Your Honor. That appraisal was reviewed by the broker himself. Had the broker seen the house? Yes. Where did he say that? He doesn't say that on the record. Well, how do you say it? It's not on the record. He didn't say that he saw the house. He said he saw the appraisal. He saw the appraisal. Correct. He saw something on this appraisal. Correct. Well, that's not much of a record. Your Honor, as I said, in the timing of events, I agree perhaps coming in with a loan would have been preferable. No question. But you can't do that as practical matter. You don't have the final amount, number one. You don't have a demand in. As I indicated, I've been doing the rescission cases since 1992. They always end up in escrow with a transfer of funds. That's the way it happens. No one voids a security interest and walks away and says, give me some money later. It's all handled in a normal escrow. You cannot get a loan prior to the time you know how much is going to have to be funded, and we weren't even at that point. And I repeat, I understand the declaration and that the court excluded it, but if you look at this record, if you look at the transcript and you look at the court's ruling itself, the opinion is that the excerpt of record beginning at 18 and the transcript, you will see what happened there at page 25 in the record. The court turns and says we're fairly familiar with this case. Thank you, Your Honor. Do you think we are? I do. I want to point out that the court itself goes on to say, you didn't come in with a declaration that says I looked at the FICO scores. I did this. I did that. But that's nowhere in the record. He imposed this standard that said you've got to have this particular type of expert. Frankly, I don't know what kind it would be other than a broker in the area that would say with some credence you could have obtained a loan based on housing prices. Your broker had never seen the house, as Judge Dunham pointed out. He had never seen the appraiser for all I know, and the appraiser's appraisal was totally hearsay. It was objected to on the grounds it was hearsay. The appraisal was by a person who was not under oath and was presented to prove truth of the matter asserted. It was clearly hearsay. I understand that, Your Honor. My point to follow on to that is what quantum of evidence could we possibly provide to establish that, yes, we absolutely could rescind when you can't possibly obtain the loan unless you have cash in hand? Is that the standard of summary judgment? You could have brought in an appraisal that was in due form in an affidavit form. Could you not? That's correct, Your Honor. That could have been done. But does that establish, I think it does not, that someone would grant a loan at that point in time? Well, but your broker based his opinion that a loan would be granted on the appraisal, which was hearsay. In part. He was on, not in part, totally. So you build a house, pardon the pun, on sand.  And in responding to that, first of all, the question arises, is the ability to tender part of the substantive right, do we have to establish that before we can even answer the question? I don't see that in the statute or in the commentary. But you do see it in Yamamoto, and we're bound by Yamamoto. I agree. And it was done there, again, on those facts as I stated them. And here the question then that comes up, I think, is what quantum of evidence other than cash in my pocket do I have to put before this court to allow me to see if I have the right even to rescind and how much I'm going to have to refinance? And I think, based on this record, this court imposed a standard that was nowhere in the record. It's supported on appeal, in fact, only by reference to everyone knows because it's in Wikipedia. And that is not the standard I'd like to reserve the rest of my time. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court, my name is Dennis Mayo, and I'm representing the defendants and affiliates. Responding as cleanly as I can to the argument, the question here wasn't whether Mr. Pacheco could have done it. We moved for summary judgment. What Mr. Pacheco, what we had to establish was there was no genuine issue. What Mr. Pacheco needed to defeat summary judgment. No genuine issue of what? Of material fact as to his ability to tender back the loan proceeds. He didn't have to prove, he didn't have to have a loan in hand, but that a reasonable trier of fact could determine that he could tender back the proceeds. The way the motion was litigated was we moved essentially that he could not tender back, at that time, which was 2010, and Mr. Pacheco supplied the declaration by the broker and some other declarations that were also found inadmissible. And putting aside the question of admissibility, not to apologize, but let's pretend that the broker's declaration was absolutely admissible. It doesn't get far enough. One, as your honors have mentioned, it's hearsay, but let's put that aside too. Let's say that the broker could competently declare that I think that the value of this property was $625,000 and that the broker could competently declare that Mr. Pacheco could refinance at about $625,000 appraisal and he could get a loan at $600,000. Even in what he said, looking at that, if that's what he had said, one, what he is focusing on simply is the property. He is not focusing on the borrower. The property is security. You look to the borrower as well. There's no indication that he looked to the condition of Mr. Pacheco at all. The second point was that you assume that brokers must look at the condition of the borrower to make a loan, to make a refinancing as if this were graven in stone or marble. But isn't our experience since 2008 that many loans were made without documentation and without any, any, any looking at the borrower? That's absolutely true. Why do you say that it couldn't be done in this case? For this reason. Two, if I can give the weaker reason and the strong reason. The weaker reason, as counsel has mentioned, we have a market that's in turmoil, if I can remember the words, turmoil and volatile. So the market itself is shifting a lot. So it's not the question where we believe at one time the real estate values go up, always up, always drastically in California. But second of all, if we look in the record, such records we have included with the broker's declaration, Mr. Lewis's, Philip Lewis's declaration, as an attachment to one of Mr. Pacheco's other declarations, is a letter from the broker. And what the broker says in that letter is that actually to obtain the loan, Mr. Pacheco will have to provide a credit report showing no late payments. Now, it's undisputed and indisputable Mr. Pacheco could not do that. Why? Because for a year and a half, I think it was, before summary judgment, and for two and a half years before this very day, Mr. Pacheco has not made any payment late or otherwise. So your position is that the affidavit of the broker established the premise that one had to look, in this case, at the borrower's credit. Yes. That's his evidence. And we'll just take his evidence at his word. That evidence does not rise to the quantum, which is established in the United States Supreme Court decisions in your own. What we're looking at is enough evidence that would allow reasonable prior fact to make a determination. There is not enough evidence here to allow reasonable prior fact to make a determination that at the time we litigated this motion for summary judgment, that Mr. Pacheco could tender back the proceeds. Again, Mr. Pacheco in his own declaration, in his deposition, excuse me, said he had no funds. The only way he could tender back is if he refinanced. The evidence that he presented at summary judgment was not enough to show that he could refinance. So the upshot of that is that the Court had to and did indeed grant summary judgment on that claim. Unless the Court has some questions, I will submit. Thank you. I'd like a couple of minutes of rebuttal. Thank you, Your Honors. Let me address the last portion of that argument first. The issue of the late payments, which we concede, by the way, some were made, is another reason that the Court should not have granted summary judgment and required such a quantum of proof of ability to tender, because if, in fact, the Court had determined liability and said you could rescind, that means that no payments were ever due, and that credit history would then have to be cleared to allow for the new loan. As a practical matter, that's what occurs. Secondly, in response, I think in both the briefing and here today, there's been some twisting of the standard. Even after Celotex, even after Celotex. What's the question before us specifically in your view? I think the question before the Court specifically, Your Honor, is was there sufficient evidence submitted to establish that there was some material questions as to whether or not Mr. Pacheco could tender at the end of the day. And I submit that there was and that they did not, in fact, negate that element. And even after Celotex, it's not enough for the moving party on summary judgment to simply say you can't do it without any other evidence. They did not present an expert saying you have to consider A, B, C, D, E. At that point, Your Honor, it was their burden to negate. It's our burden to respond to that. No. Celotex tells us that the non-moving party must simply point to an element of the cause of action of the plaintiff which is absent. At that point, the plaintiff who's – pardon me, the moving party simply has to point to an element of the plaintiff's case which is absent. Then the plaintiff must provide the evidence. That's correct, Your Honor. But even after Celotex, this court has said in Nissan it's not enough for them to come in as they did and simply say you can't tender. They presented nothing. No. What they're saying is you can't – you don't have any evidence that you can tender. Yes. But the evidence that came in was then weighed by the court. That's our point on summary judgment. Thank you. Pardon me. It wasn't weighed. It was objected to and rejected by the court. It was rejected by the court for a series of reasons, and I pointed to the record a series of reasons. The court did not feel that it was sufficient because he didn't list the FICO score. He didn't go and look at the property itself. There's nothing in the record that says that broker cannot offer that opinion unless he does that. And that's why I think the court weighed that evidence in truth. All right. Thank you. Thank you very much, Mr. Mulligan. In the case of Pacheco v. Homecoming, financial was not submitted. We thank counsel for their argument. The next case is the Tom Bean v. USA, but that's deferred pending disposition of the case of Alaska Stock v. Houghton Mifflin.
judges: Farris, Noonan, Bea